# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1916
Filed April 1, 2026

————————————

**In the Interest of W.G., Minor Child,**

**K.M.,**
Potential-Intervenor-Appellant.

————————————

Appeal from the Iowa District Court for Linn County,
The Honorable Angeline Johnston, Judge.

————————————

**AFFIRMED**

————————————

K.M., Cedar Falls, self-represented potential-intervenor-appellant.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Robin L. Himes of Linn County Advocate, Cedar Rapids, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

In this case, we are asked: Can a biological parent whose rights to a child were terminated later intervene in the courts when that child is back in the juvenile-court system as a child in need of assistance (CINA)? We answer no, at least on the facts present here—where the biological mother has no recent relationship with the child. And we address an issue with artificial intelligence hallucinating case citations before assuming without deciding we can reach the merits.

## BACKGROUND FACTS AND PROCEEDINGS

In 2020, we affirmed on appeal the termination of K.M.'s parental rights to two children, including the child now known as W.G. *In re A.M.*, No. 20-0116, 2020 WL 1881109, at *1 (Iowa Ct. App. Apr. 15, 2020). Following termination of K.M.'s rights, W.G. was adopted. Then, during a 2025 CINA case relating to that placement, W.G. was removed from his then-legal parents and they consented to termination of their rights.

At some point during this latest CINA case, the Iowa Department of Health and Human Services (HHS) sent notice of case developments to K.M. HHS now says that notice was sent in error. Regardless, K.M. subsequently moved to intervene, claiming she should be considered a relative of W.G. despite termination of her parental rights. The county attorney and W.G.'s guardian ad litem both resisted. Following multiple hearings, due in part to recusal of the first juvenile judge at K.M.'s request, the juvenile court denied her motion to intervene under the relevant statutory provisions and rules of civil procedure.

As to the statutory bases, the juvenile court recognized parties generally may intervene in juvenile cases if they have a statutory right to be

considered for custody. *See In re B.B.M.*, 514 N.W.2d 425, 427–28 (Iowa 1994). As relevant here, the court considered whether K.M. was an "adult relative" under Iowa Code section 232.117(3)(b) (2025) or "fictive kin" under 232.117(3)(c). By definition, a "relative" does not include a parent (of the child or a sibling) whose parental rights to the child at issue were previously terminated. Iowa Code § 232.2(60). So the court ruled out the first provision. As for the second, " 'fictive kin' means an adult person who is not a relative of a child but who has an emotionally positive significant relationship with the child or the child's family." *Id.* § 232.2(24); *cf. In re L.P.*, ___ N.W.3d ____, ____, 2026 WL 705431, at *10–12 (Iowa 2026) (discussing "fictive kin"). K.M. has no meaningful relationship with W.G. and hasn't since termination. So the juvenile court ruled out this provision too.

As for the rules of civil procedure, the juvenile court noted it had some discretion to permit K.M. to intervene even if she did not meet the statutory definitions. *See* Iowa R. Civ. P. 1.407(1). The court considered K.M.'s potential interest, including what if any of her legal rights the proceedings might affect. *See In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997); *B.B.M.*, 514 N.W.2d at 427–30. And the court concluded that K.M. lacked any definite interest that would support intervention because her parental rights to W.G. were terminated.

K.M. appeals pro se.[1]

---

[1] We assume without deciding that K.M.'s appeal of the motion-to-intervene ruling may proceed as a matter of right or by discretionary review. We have some concern about the potential consequences of recognizing appeal as a matter of right in these circumstances, as we do not believe the General Assembly contemplated a parent whose rights were terminated could file endless motions to intervene or as-of-right appeal the same. Since neither party contests appellate jurisdiction, we leave this question for another day, and we grant extraordinary review to the extent necessary.

## ARTIFICIAL INTELLIGENCE AND HALLUCINATED CASE CITATIONS

After this case was transferred to our court, we discovered that K.M.'s petition on appeal appeared to have been drafted by or with the assistance of generative artificial intelligence (AI). It included at least one citation to a non-existent Iowa appellate decision and asserted multiple propositions of law that were nowhere to be found in the cited authorities. We recently addressed this issue in another case. *See In re R.A*, No. 24-1629, 2025 WL 2793560, at *2–4 (Iowa Ct. App. Oct. 1, 2025). Most pertinent here, we note that using AI in legal matters carries the risk of AI "hallucinating" or fabricating legal authorities that do not actually exist. *See* Thomas A. Mayes *Artificial Intelligence, Special Education, and the Law: Risks, Rewards, and Opportunities for Leadership*, 20 J. Bus. & Tech. L. 115, 121–22 (2025) ("[AI] may 'sometimes even make up facts.' This includes fabricating case citations, even if the proposition it is citing the case for is correct or misstating the holding of a case that exists." (footnotes omitted)).

Like in *R.A.*, we entered an order here directing K.M. to file copies of the problematic cases and providing that, if she was unable to do so, she was required to disclose whether she used AI to draft her petition on appeal. In her response to the court's order, K.M. admitted that the case we believed to be hallucinated was in fact "non-existent" and her citation "d[id] not correspond to any Iowa appellate decision." She also admitted that AI led her to "attribut[e] specific propositions" of law to a case in which those propositions "do not appear." And she disclosed that she prepared the petition using the paid version of the AI tool Perplexity. *See generally What Is Perplexity Pro?*, Perplexity: Perplexity Help Center (Mar. 12, 2026), https://perma.cc/5DAL-2LXN.

K.M. went on to apologize to the court and opposing party, and she said that she believed she had verified the AI's legal citations but now understood she "made mistakes." She wrote that she "accept[ed] full responsibility for these errors." And that she "underst[ood] that it is [her] duty—even as a pro se litigant—to independently verify that all case citations are real, correctly cited, and accurately described before filing them with the Court."

On her duty, K.M. is correct as a matter of law: even self-represented litigants must "independently verify the authenticity and veracity of all sources and assertions" in their court filings. *See Luke v. Dep't of Health and Hum. Servs.*, 29 N.W.3d 635, 636 (Iowa Ct. App. 2025). This is because "Iowa law dictates that [a pro se] brief is judged by the same standard as a brief filed by an Iowa lawyer. The law does not judge by two standards, one of lawyers and another for non-lawyers." *In re Est. of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997) (internal citation omitted). While we appreciate that K.M. has expressly vowed, going forward, to independently check and verify all citations in her filings, that is the bare minimum we expect from litigants.

In her response, K.M. recognized that filing pleadings with fabricated citations is a serious matter and undermines the "integrity of the judicial process." We agree. K.M.'s fabricated citation has caused substantial expenditure of judicial resources and delayed resolution of this appeal.

Last, K.M. asks that we allow her to "withdraw" her fabricated citation and decide this appeal on the merits. We think we would be justified in striking the entirety of her petition on appeal and dismissing the appeal or summarily affirming the ruling below on that basis. *Cf. id.* at 181 ("We are not bound to consider a party's position when the brief fails to comply with the Iowa Rules of Appellate Procedure."). And in *R.A.*, the sanction we imposed

included striking the entirety of the problematic brief. 2025 WL 2793560, at *2–4. However, as a matter of grace and in an exercise of our discretion, we elect a lesser sanction here. We strike the problematic portions of K.M.'s petition on appeal and consider only the arguments we can discern without the taint of the fabricated and false citations. We thus assume without deciding we can reach the merits, in part to provide finality on this issue to the child affected by this juvenile proceeding.

## MERITS

Having finished our detour to address the briefing misconduct, we review the juvenile court's ruling for "correction of errors at law, giving some deference to the district court's discretion." *A.G.*, 558 N.W.2d at 403. After an independent review of the record, we agree with the juvenile court's statutory and rules-based analysis and discern no abuse of discretion.

A biological parent who has no legal or recent relationship with a child does not qualify as either an "adult relative" or "fictive kin" as those terms are used in chapter 232. Nor does such a biological parent have a sufficient legal interest in the proceedings to warrant intervention under the rules of civil procedure. As a result, we affirm denial of K.M.'s motion to intervene under these circumstances.

In addition to the statutory and rules-based arguments, we also explicitly reject K.M.'s challenge concerning conduct of the first (recused) juvenile judge. K.M. made no objection below to the second judge conducting a hearing, judicially noticing the prior filings, and ruling on the merits of her motion. Therefore any allegation that the second judge's ruling was somehow tainted by the alleged problems with the first judge is

6

unpreserved and cannot be considered by us on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Last, we observe that many of K.M.'s scattershot complaints are unpreserved or not properly brought in this appeal from denial of her motion to intervene. For example, the legal preference for placing siblings together is irrelevant to that order, as W.G.'s placement is not before this court. And because she has no parental rights to W.G., HHS had no duty to make reasonable efforts toward reunifying K.M. with W.G., and we have nothing on that issue to review. Similarly, whether HHS correctly or incorrectly gave K.M. notice of the CINA case has nothing to do with the legal question of whether she may be a statutory or rules-based intervenor. To the extent K.M. makes any other challenges we do not expressly reject in this opinion, we deny them as meritless, unpreserved, waived, or some combination of those.

## DISPOSITION

Based on K.M.'s court-ordered response addressing fabricated and inaccurate case citations generated by AI, we strike the portions of her petition on appeal containing the problematic citations. Assuming without deciding we can reach the merits of her argument, we affirm the juvenile court's denial of K.M.'s motion to intervene.

**AFFIRMED.**